## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOROTHY ANN CAMPBELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:09-CV-618-TFM** |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act,  42 U.S.C. §§ 1381 *et seq*., Dorothy Ann Campbell ("Campbell") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.   When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

### I.      STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.    The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982).  This court must find

the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Campbell, age 47 at the time of the hearing, obtained her GED in 1992. Campbell's past relevant work includes employment as a hand packer and news print

feeder.  She has not engaged in substantial gainful work activity since the application date of July 25, 2005.  Campbell's application claims she is unable to work because of rheumatoid arthritis, osteoporosis, depression and gout.  She alleges these conditions cause pain in both legs and in her hands/wrists, foot pain, and anxiety and itching.[1]

During Campbell's administrative hearing, the ALJ asked whether Campbell needed the cane that she carried into the hearing.  Campbell said that she seldom used the cane and that it was not prescribed.[2]  Campbell described her current part-time work as a news print feeder and past work as a hand packer, which terminated when she broke her leg.  Campbell told the ALJ that she could not work because of pain in her knees and ankles, and anxiety attacks that caused her to itch and feel like things are crawling on her. The anxiety attacks occur approximately twice weekly and sometimes last an entire day.[3] Campbell's physician, Dr. Mancuso, treats the itching/anxiety with Doxycycline (an antibiotic) and Effexor (for depression).[4]  Campbell sometimes takes Lortab twice daily for pain, but also uses Tylenol and ibuprofen.[5]  Her pain is constant whether she is sitting or standing, and she sometimes has stabbing pain in her knees and ankles.  Campbell rated her pain as level eight to nine on an average day, and medication reduces that level to a seven.[6]  After more detailed questioning by the ALJ, Campbell estimated the constant pain to level five, and level eight when the stabbing sensation begins.[7]

---

[1] R. at 151.
[2] R. at 408-09.
[3] R. at 413-14.
[4] R. at 414, 422; 215.
[5] R. at 415.
[6] R. at 417-18.
[7] R. at 417-19.

Campbell estimated that she can stand and sit for thirty minutes to an hour, and can lift five to ten pounds. She does not know what triggers her anxiety attacks and is not in therapy for anxiety.[8] Campbell does not have trouble getting along with people and sometimes has trouble concentrating, but estimated that concentration problems occurred some months ago, when she changed workstations without knowing why.[9] Campbell helps her husband with household chores such as housecleaning, dishes, and yard work. She also handles the household finances. Her leisure activities are visits from children and grandchildren and watching television. When her pain is not severe she tries to get yard chores done.[10] She stated that she can't get down on her knees but can "bend over straight," but not at her knees.[11] Campbell's conditions are worsened by hot, cold, and rainy weather, and she is physically drained approximately three times per week. She has carpal tunnel syndrome and can pick up a gallon of milk with her right hand, but not with her left. She does not carry heavy items and sometimes her daughters help her with shopping.[12]

The ALJ reviewed Campbell's medical records and determined that treating physician Dr. Diana Mancuso has been her primary treating physician for medical and psychological conditions since 2003.[13] Dr. Mancuso treated and/or referred Campbell for anemia, depression, anxiety, allergic rhinitis.[14] Dr. Mancuso referred Campbell to Dr. Craig Omohundro, a dermatologist, who diagnosed diffuse pruritis (possibly related to

---

[8] R. at 421-22.
[9] R. at 422-23.
[10] R. at 424-26.
[11] R. at 432.
[12] R. at 427-31.
[13] R. at 15, 20.
[14] R. at 15, 20.

anemia or anxiety), acne, alopecia, and lichen simplex chronicus.  Treatment consisted of medication.  Dr. R. Dean Lolley, orthopedic surgeon, treated Campbell for right thumb and knee pain.  Treatment consisted of injections and medication.  Campbell declined recommended thumb surgery due to lack of health insurance. Additional medical records show treatment for right knee arthritis, depression, allergic rhinitis, acne, anemia, and neurodermatitis due to dry skin.

Dr. Sam. R. Banner performed a consulting examination on January 22, 2007. Campbell's muscle strength was 5/5 with no evidence of atrophy; fine and gross manipulation were normal, and her gait was normal.  Dr. Banner wrote that Campbell "demonstrated no pain or difficulty getting on and off the [examining] table," and that her gait does not require an assistive device.  Dr. Banner noted hypertension as well as histories of degenerative joint disease, carpal tunnel syndrome, and depression.[15]

David Ghostley, Psy.D., clinical psychologist, performed a consulting examination on January 24, 2007.  Dr. Ghostley noted Campbell's report of depression, rated eight on a scale of one to ten, and anxiety attacks where she feels like her skin crawls.  Dr. Ghostley placed Campbell's intellectual functioning in the low average to borderline range.  Campbell reported her non-work activities as cooking, resting, reading, or watching television.  She was diagnosed with a mild form of major depressive disorder and anxiety disorder not otherwise specified.  Dr. Ghostly concluded that an anxiety attack would cause a mild to severe impairment of Campbell's abilities to understand,

---

[15] R. at 15; 277-80.

remember, and carry out instructions, or to respond appropriately to supervisors, co-workers, and work pressures.[16]

Larry Dennis, Ph.D., a state agency psychological consultant, reviewed Campbell's record and completed a psychiatric review technique form and mental residual functional capacity assessment. Dr. Dennis concluded Campbell has moderate restrictions in activities of daily living, social functioning, and concentration, persistence or pace, with no episode of decompensation. He found her moderately impaired in her (1) ability to understand, remember, and carry out detailed instructions; (2) ability to maintain attention and concentration for extended periods; (3) ability to work in coordination or proximity to others without distraction; (4) ability to complete a normal work day or work week without interruptions from psychologically based symptoms; and (5) ability to interact appropriately with the public, or to respond appropriately to supervisors and co-workers. Dr. Dennis did find Campbell is able to understand, remember, and carry out short and simple instructions, and that she can maintain attention and concentration for two-hour periods. He recommended casual contact with others, non-confrontational criticism in an environment with a few familiar co-workers, and gradual/infrequent change in the workplace.[17] Dr. Dennis's review also notes that Campbell reports no problems getting along with others, and that that her allegations of depression/anxiety are partially credible, but her impairments are not as functionally limiting as alleged.[18]

---

[16] R. 15; 282-83.
[17] R. at 16; 257-74.
[18] R. at 273.

A residual functional capacity (RFC) assessment was completed by a state agency examiner on February 15, 2007.[19]   The examiner found Campbell can lift and carry ten pounds frequently and twenty pounds occasionally; that she can stand/walk for two hours during an eight-hour day; that she can sit for six hours during an eight-hour day; that she can occasionally climb ramps or stairs; that she can occasionally crouch.  The assessment recommended that Campbell avoid all exposure to hazards, and avoid concentrated exposure to extreme cold, wetness, and humidity.

In addition to Campbell's treatment records, the ALJ reviewed an August 20, 2008 letter from treating physician Dr. Diana Mancuso.  Dr. Mancuso recounts her referrals of Campbell for evaluation and treatment of osteoarthritis, and states her belief that Campbell is unable to "hold down a full time job in light of these chronic knee problems [sic] particularly the type of work she is doing i.e. standing all day.  She has had swelling of her knees and it also makes it difficult for her to walk, bend or stoop."  The letter notes Campbell's history of chronic depression, but states that depression, "in and of itself has not prevented her from working."  The letter reiterates that Campbell's "chief disabling diagnosis" is severe arthritis of her knees.[20]

A vocational expert (VE) testified during Campbell's hearing.  At the outset of the VE's testimony, the ALJ instructed the VE to note any differences between her testimony and the information in the Dictionary of Occupational Titles.[21]   The ALJ profiled an individual with Campbell's vocational history who is limited to lifting and carrying no

---

[19] R. at 16; 249-56.
[20] R. at 16; 231.
[21] R. at 435.

7

more than ten pounds; able to stand and walk no more than thirty minutes at a time and no more than two hours in and eight-hour workday; able to only climb stairs with a handrail; unable to kneel, crawl, or stoop; and able to occasionally bend and crouch.  The VE responded that these limitations excluded Campbell's past employment, but did permit employment as a production assembler, general office clerk, or escort vehicle driver.  Each of these positions is categorized as sedentary and unskilled.[22]  The ALJ further excluded extreme temperatures, fine fingering, unprotected heights and dangerous moving equipment.  The VE qualified Campbell's ability to work as an assembler by noting that she could only perform that job at the unskilled level because the semi-skilled or skilled level would require fine fingering.[23]  The ALJ sought to clarify that all jobs identified are sedentary/unskilled even though two positions are identified differently in the DOT, or may be performed at the light or medium level.  The VE confirmed the ALJ's understanding and cited as authority for her responses the Occupational Employment Quarterly for the State of Alabama, as well as her experience in career placement.[24]

Campbell's attorney asked the VE whether a person with the restrictions in Dr. Mancuso's opinion letter of August 20, 2008, would be able to perform the occupations identified during testimony.  The VE stated that occasional bending or stooping would be consistent with the sedentary occupations identified, but that an inability to bend altogether would prohibit all types of employment.  Counsel then asked whether a person

---

[22] R. at 436-38.
[23] R. at 439-40.
[24] R. at 442.

who can sit, but not stoop, could perform the jobs. The VE cited the DOT to state that only 8 out of 137 sedentary jobs would be excluded by an inability to stoop.[25] The VE stated that no occupation would accommodate task abandonment on a regular basis.[26] The VE confirmed that work as an escort vehicle driver does not permit a sit/stand option.[27] Counsel stated that he would try to get more specific information from Dr. Mancuso regarding Campbell's limitations. The ALJ stated that she would not hold the record open for additional information but would review whatever Counsel submitted.[28]

Counsel submitted an updated medical opinion from Dr. Mancuso to the Appeals Council.[29] The statement, dated September 17, 2008, expresses Dr. Mancuso's opinion that Campbell cannot perform sedentary work because of her knees. The Appeals Council denied Campbell's request for review.

The ALJ found Campbell is severely impaired by osteoarthritis of the knees, carpal tunnel syndrome, iron deficiency anemia, and affective depressive disorder with anxiety features.[30] The ALJ found this combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[31] Substantial weight was given to the reports of Dr. Banner and Dr. Mancuso. The ALJ noted that she found Dr. Mancuso's conclusion of disability to be unsupported by her records and the balance of medical evidence, and specifically found that Campbell cannot perform prolonged standing or walking, can only climb stairs occasionally where

---

[25] R. at 443-45.
[26] R. at 445.
[27] R. at 446-47.
[28] R. at 447, 449.
[29] R. at 216.
[30] R. at 14.
[31] R. at 16.

a handrail is available, is unable to kneel, crawl or stoop, and can only bend and crouch occasionally.[32]   The ALJ concluded Campbell is unable to perform any past relevant work and cited VE testimony that she can work as a production assembler, general office clerk, escort vehicle driver, and hand packager (sedentary).[33]   The ALJ addressed the VE's divergence from the information in the DOT, explaining that the hand packager position deemed within Campbell's ability encompasses only sedentary work.   The ALJ cited the VE's reference during the administrative hearing to the Occupational Employment Quarterly and career development experience.[34] The finding that Campbell can perform the work identified by the VE led the ALJ to conclude she is not entitled to disability benefits under the Act.[35]

## III.  ISSUES

Campbell raises three issues for judicial review:

1.   Whether the ALJ failed to properly evaluate the opinions of Dr. Dennis and Dr. Ghostley;

2.   Whether the ALJ failed to properly identify and resolve the conflicts between the Vocational Expert's testimony and the Dictionary of Occupational Titles; and

---

[32] R. at 19-20.

[33] R. at 20, 22.

[34] R. at 22; 441-42.

[35] R. at 22.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

3.  Whether the new and material evidence submitted to the Appeals Council

warrants remand.[36]

## IV.  DISCUSSION

### 1.  <u>**The ALJ had no duty to explain the weights assigned to opinions by consulting psychologists.**</u>

Campbell argues the ALJ did not explain the weights accorded the opinions of consulting psychologists as required by Eleventh Circuit precedent and Social Security Ruling (SSR) 96-8p.  The Commissioner responds that the ALJ's decision is supported by substantial evidence in the record, including Campbell's own testimony.  The Commissioner also argues that the ALJ's decision is not inconsistent with the treating opinion.

Regulations at 20 C.F.R. § 404.1527(f) address an ALJ's consideration of nonexamining sources.   An ALJ is instructed to consider factors such as the psychologist's specialty and expertise in SSA rules, supporting evidence in the record, and supporting explanations.   20 C.F.R. § 404.1527(f)(2)(ii).   Specifically, this regulation states

> Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the ALJ must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

---

[36] Campbell sought and received the Court's permission to file a Reply Brief.  *See* Doc. 18.

*Id.*   Identical regulatory language addressing the evaluation of nonexamining opinion evidence in applications for SSI is found at 20 C.F.R. § 416.927(f)(2)(ii).

Under the Court's reading of these provisions, an ALJ's decision to give no weight to a treating opinion triggers an obligation to discuss consulting opinions, whether from the State agency or independent practitioners.   In this case, however, Dr. Mancuso's opinion was given substantial weight by the ALJ, and the obligation to explain the weights assigned to consulting opinions does not arise.   Even though Dr. Mancuso's opinion was discounted regarding its conclusion that Campbell is physically disabled, the record shows that she is Campbell's treating physician for purposes of her mental health care.[37]   Thus, the ALJ's reliance on Dr. Mancuso's opinion as to Campbell's mental health is valid.

Campbell seeks to rely on caselaw which states an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefore." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam).   She does not, however, acknowledge that the opinion of her treating physician regarding her mental health was given substantial weight.   She further cites other cases for the principle that and ALJ must address the weights given to consulting opinions.   The Court has reviewed the primary case cited for this proposition by Campbell, *McCloud v. Barnhart*, 166 Fed.Appx. 410 (11th Cir. 2006).   That case cites the regulatory language in 20 C.F.R. § 404.1527(f)(i)-(ii) as authority for an ALJ's obligation to explain the weight given to consulting psychologist's opinions **only** where an opinion by a treating source does not

---

[37] R. at 15, 215, 231, 277.

receive controlling weight.  *McCloud,* 166 Fed.Appx. at 419.  Similarly, the Court reviewed *Burroughs v. Massanari*, 156 F.Supp.2d 1350 (N.D. Ga. 2001)[38] to find that the ALJ rejected the treating physician's opinion, and so triggered additional responsibilities under 20 C.F.R. § 404.1527(f)(i)-(ii).  *Burroughs*, 156 F.Supp.2d at 1361-62.

The arguments advanced by Campbell on this issue ignore clear regulatory standards which take precedence over the inapposite cases cited and agency policy set forth in SSR 96-8p.  Accordingly, the Court finds no error as to this issue.

## 2.  <u>The ALJ properly identified and resolved the conflicts between the Vocational Expert's testimony and the Dictionary of Occupational Titles.</u>

Campbell argues the ALJ did not comply with SSR 00-4p because she did not identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT).  The Commissioner responds that the ALJ's decision identifies and addresses the inconsistencies identified by the VE, as required under controlling Eleventh Circuit decisions.

Campbell cites SSR-00-4p as grounds for error, arguing that the policy ruling requires an ALJ to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the DOT," and to explain the resolution of any existing conflict, no matter how the conflict was identified.[39]  Campbell interprets the ruling to require the ALJ to go beyond a VE's statements and identify/address any divergent responses, even if they were not noted as such during the hearing.  Campbell claims error because the ALJ only gave a reasonable

---

[38] Cited in Reply Brief.  Doc. 18 at 3.
[39] Pl. Br. at 7, 12.

explanation for that portion of the VE's testimony which deviated from the DOT, and which was highlighted during the hearing.  She concedes that three occupations – production assembler, hand packer, and general office clerk – were all identified by the VE as having a sedentary classification, and given a reasonable explanation by the ALJ.[40] The ALJ decision noted that the VE testimony diverged from the DOT, explained that the stated response was for sedentary work, and that the basis for the response was the Occupational Employment Quarterly and VE experience.[41]  In support of her claim that the ALJ erred, Campbell lists multiple issues that she argues pose inconsistencies between the identified jobs and her RFC, as set forth by the ALJ.  None of these issues were raised during the administrative hearing and are presented for the first time in this court.

Campbell notes that the Eleventh Circuit has not addressed SSR 00-4p, but concedes that the Court has previously held that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999).  The *Jones* decision predates the SSA's adoption of SSR 00-4p, and Campbell does not cite any authority holding that *Jones* is overruled by the policy ruling. However, the Commissioner cites an Eleventh Circuit decision which holds that an agency's policy statement does not have the force and effect of the law or regulations, and that such statements "do[ ] not bind this [C]ourt."  *Miller v. Comm'r of Soc. Sec*., 246 Fed.Appx. 660, 662 (11th Cir. 2007), quoting *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th

---

[40] Pl. Br. at 8-9, 12-13.
[41] R. at 22.

Cir. Unit B Apr. 1981).  Consequently, SSR 00-4p cannot undermine the holding of a

federal circuit court, and this court must follow *Jones*.

The lasting impact of the *Jones* decision on cases which present conflict between

VE testimony and DOT listings post-SSR 00-4p is discussed in *Garskof v. Astrue*, 2008

WL 4405050 (M.D. Fla. 2008), where the court held that the "promulgation of SSR 00-

4p does not [ ] undo the rule in *Jones* nor does the ruling by its own wording, mandate

that an ALJ has a duty to independently investigate whether there is a conflict between

the VE's testimony and the DOT."  *Garskof*, 2008 WL 4405050, at *5.  *Garskof*

continued to state that SSR 00-4p "only obligates the ALJ to ask the VE whether there is

a conflict and if the VE identifies a conflict the ALJ is required then - and only then – to

address the conflict in his decision and resolve it."  *Id.* at *6.  As stated earlier, Campbell

concedes the ALJ met this standard.  Other appellate cases cited in *Garskof* support this

interpretation of an ALJ's obligation.  *See Martin v. Comm'r of Social Security,* 170

Fed.Appx. 369, 2006 WL 509393, at *4-5 (6th Cir. 2006); *Haas v. Barnhart*, 91

Fed.Appx. 942, 947-48 (5th Cir. 2004); *Gibbons v. Barnhart*, 85 Fed.Appx. 88, 93 (10th

Cir. 2003).

The issues identified by Campbell were not identified by the VE during the

hearing, and the ALJ was not obligated to address or explain any inconsistencies not

identified by the VE.  The record supports the ALJ's reliance on the VE's testimony that

Campbell is capable of performing work in the national economy, and there is no

reversible error as to this issue.

**3.** __The Appeals Council correctly considered the later opinion from__
   __Campbell's treating physician.__

Campbell argues the Appeals Council should have remanded her case upon its

review of an updated statement from her treating physician.  The Commissioner responds

that the Appeals Council did not err because the statement was unreliable.

Dr. Mancuso's opinion of September 17, 2008 purports to rule out Campbell's

ability to perform the sedentary jobs identified by the VE during the hearing.  Campbell

argues that the opinion provides specific reasons for her inability to work because it

clarifies Dr. Mancuso's earlier opinion which became a topic of discussion during the

administrative hearing.[42]  Campbell argues that the later opinion/clarification is entitled to

the substantial weight and may not be discounted without good cause.[43]  A treating

physician's opinion "must be given substantial or considerable weight unless 'good

cause' is shown to the contrary.'"  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir.

2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" is

present where the "(1) treating physician's opinion was not bolstered by the evidence; (2)

evidence supported a contrary finding; or (3) treating physician's opinion was conclusory

or inconsistent with the doctor's own medical records."  *Id.* at 1241*,* citing *Lewis.*

The Commissioner argues that good cause exists to disregard Dr. Mancuso's

second opinion.  He notes that the first opinion, dated less than one month earlier on

August 20, 2008, identified Campbell's inability to stand for long periods of time as the

---

[42] R. at 443-44, 447.

[43] Dr. Mancuso's earlier opinion was given substantial weight with the exception of her conclusion of disability.  R.
at 19-20.

chief reason for disability, with additional difficulties in walking, bending, or stooping.[44] The Commissioner argues the latter opinion is inconsistent with the earlier one, which does not mention any limitations on Campbell's ability to sit.  The Commissioner further argues the September opinion conflicts with the State Agency opinion, which in turn is based on the medical record before the ALJ.  A final point is that Dr. Mancuso's second opinion was only obtained after the ALJ indicated her belief that Campbell could perform sedentary work, and that the opinion is therefore less persuasive.  *See Weetman v. Sullivan,* 877 F.2d 20, 23 (9th Cir. 1989).

The Court agrees with the Commissioner.  The September opinion is not a clarification of the August opinion, but simply raises barriers to Campbell's performance of sedentary work.  Campbell's difficulty sitting was not raised by Dr. Mancuso in her initial opinion.  Thus, good cause exists to discount the opinion, and the Appeals Council did not err in affirming the ALJ's decision.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion,* the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

---

[44] The Court notes that Campbell testified at the hearing that she can't get on her knees, but nonetheless can bend when working in her garden.  R. at 432.

DONE this 25th day of August, 2010.

> /s/ Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE